UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ANTHONY A. COOPER,    ) | Civil Action No.: 3:16-cv-1606-MGL-TER |
| ) | |
| Plaintiff,    ) | |
| ) | |
| -vs-    ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| RICHLAND COUNTY RECREATION    ) | |
| COMMISSION, JAMES BROWN, III,    ) | |
| DAVID STRINGER, and TARA    ) | |
| DICKERSON, in their individual capacities, ) | |
| ) | |
| Defendants.    ) | |
| _____    ) | |

## I.    INTRODUCTION

This action arises out of Plaintiff's employment with the Richland County Recreation Commission. Plaintiff alleges race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., and state law causes of action for defamation, civil conspiracy, intentional infliction of emotional distress, and public policy discharge. Presently before the court is Defendants' Motion to Dismiss (Document # 5) Plaintiff's claims for defamation, civil conspiracy, intentional infliction of emotional distress, and public policy discharge. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

## II.    FACTUAL ALLEGATIONS

At all times relevant to the allegations set forth in the amended complaint, Plaintiff was employed as the Director of Procurement for the Richland County Recreation Commission (RCRC).

Am. Compl. ¶ 1. Plaintiff began his employment with RCRC in 1996 and was terminated on June 29, 2016. Am. Compl. ¶ 11. Plaintiff reported to Ronnie Kinnett, Division Head of Property Management, until Kinnett retired in late 2015. Am. Compl. ¶ 13.

Defendant Brown is the Executive Director of the RCRC, Defendant Stringer is the Division Head of Human Resources for the RCRC, and Defendant Dickerson is the Chief of Staff of the RCRC. Am. Compl. ¶¶ 3-5.

In 2008, Richland County Council approved $50 million in recreation bonds ("the Bond") to be administered by RCRC. Plaintiff's duties included overseeing the Bond and purchasing and procurement for the same. Plaintiff participated in the Ad-Hoc committee for the Bond, which made a decision not to take action on a request made by a construction management company to extend its services. Defendant Brown as well as two members of the RCRC Board, Marie Green and Barbara Mickens, were aware of this decision and were not pleased because they favored the company. Am. Compl. ¶ 12.

Plaintiff alleges that Brown has threatened Plaintiff with termination and exhibited animosity towards Plaintiff on several occasions. As an example, Plaintiff alleges that Brown made sexual advances toward Plaintiff's wife and then accused Plaintiff of spreading rumors about the incident. Plaintiff alleges that, on another occasion, Plaintiff's son was hurt by an RCRC staff member while participating in an RCRC event and Brown failed to take appropriate action against the staff member yet suspended Plaintiff's son. Am. Compl. ¶ 14.

As part of his job responsibilities, with the guidance of the RCRC Procurement Policy and the South Carolina Consolidated Procurement Code, Plaintiff worked towards getting the best price that is fair and reasonable when procuring goods and services for the Bond. He alleges that Brown

made it apparent that he did not appreciate that Plaintiff worked diligently to follow policies and often would want Plaintiff to deviate from the accepted standards. Am. Compl. ¶ 15.

Plaintiff alleges that in November or December of 2015, Brown made comments to other RCRC personnel and others that he was going to terminate Plaintiff's employment as soon as the Bond projects were completed and that Plaintiff does not favor black people and is an "undercover white boy" and a "house n****r." Am. Compl. ¶ 18.

In anticipation of Kinnett's retirement, the Division Head of Property Management position was posted and Plaintiff applied in early 2015. Plaintiff received a letter dated February 11, 2016, from Defendant Stringer informing him that the position was offered to an "incumbent employee." Bryan Crider, a Caucasian male, was awarded the position. Am. Compl. ¶ 19.

On January 16, 2016, Brown called an unscheduled staff meeting, during which, Plaintiff alleges, he acted hostile and made threats and inappropriate statements. Plaintiff alleges that during the meeting Brown announced that the RCRC Board[1] wanted there to be a buffer between him and the staff and that Tara Dickerson was promoted to a newly created position of Chief of Staff. Among other threats and inappropriate statements, Plaintiff alleges that Brown stated that he was too good to the staff and they made too much money, specifically referring to Plaintiff, but that was going to change. Brown also allegedly stated that if the staff did not like the way things were around RCRC,

---

[1] In 2014, the board received anonymous letters complaining about Brown and the RCRC, but Brown made it clear that he had at least four votes on the board to avoid any action against him. He stated that he helped Marie Green and Barbara Mickens, members of the board, financially and that other members of the board, Furgess and Martin, were on his side. On September 22, 2014, a motion was passed by a 5-2 vote to hire an attorney to conduct an investigation of Brown. However, Martin and Furgess later rescinded their vote and a new motion to rescind the earlier decision for an investigation, passed by a 4-3 vote. Am. Compl. ¶ 16.

they could just quit, reminding them that South Carolina is an at-will state. Am. Compl. ¶ 20. Plaintiff alleges Brown said a board member, Marie Green, told him that "black people don't listen to black people" and that he needs a white face, i.e., Dickerson, to "crack the whip" on the black people. Am. Compl. ¶ 21.

Plaintiff alleges that Brown, Stringer, and Dickerson have continued efforts to target Plaintiff. He alleges that since Dickerson was appointed as Chief of Staff in January of 2016, Plaintiff has been excluded from certain functions and isolated. He alleges that his job duties have been taken away and disbursed to other employees. After being denied the Division Head of Property Management position in February of 2016, Plaintiff alleges that he has been excluded from several Bond-related bid processes of which he should have been included as Director of Procurement. Plaintiff alleges that he has been overly scrutinized and monitored in an effort to find a basis to terminate his employment. Am. Compl. ¶ 22.

On April 18, 2016, Plaintiff was given a verbal counseling for what he alleges was an unfounded complaint concerning Plaintiff's driving of an RCRC vehicle, which Plaintiff denies. He alleges that other employees have received complaints in the past and were not formally disciplined. He alleges that RCRC employees outside Plaintiff's chain of command or Human Resources were told about the disciplinary action before Plaintiff. Am. Compl. ¶ 23.

Plaintiff alleges that law enforcement began an investigation of Brown and others related to RCRC, and Plaintiff complied with the investigators. He was told to report any additional information to them. At one point Plaintiff went to the dumpster to empty his office trash can where he noticed shredded documents that appeared to include purchase orders and other out-of-place documents. Plaintiff reported this to the investigators, who he believes took the shredded documents

from the trash that same day. Am. Compl. ¶ 24. In early June of 2016, the Richland County Council advised that they would withhold from RCRC the funding over what was required by law for the upcoming fiscal year until an audit was conducted. Am. Compl. ¶ 25.

Despite the allegations of misconduct and investigation, Brown remained in his position as Executive Director instead of being placed on leave during the pendency of the investigation. On June 21, 2016, the Richland County Legislative Delegation voted to recommend to the RCRC Board that Brown be placed on suspension with pay pending the law enforcement investigations into his office. Am. Compl. ¶ 26.

On June 29, 2016, Plaintiff was terminated from employment with RCRC and presented with a letter of termination from Stringer, which, Plaintiff alleges, falsely accused Plaintiff of placing documents in the dumpster in violation of a litigation hold. As set forth above, Plaintiff alleges that he witnessed shredded documents in the dumpster that appeared to include financial records that should not have been shredded and reported his finding to investigators. The termination letter also claimed that Plaintiff's employment was ending "[i]n light of this incident, the current Richland County Council budget shortfall, and with the ending of the bond and subsequent elimination of the Director of Bonds position." Plaintiff asserts that the bond has not ended, the alleged budget shortfall is directly related to the audit, and that Plaintiff was terminated before he could be present for the audit. Am. Compl. ¶ 27. Brown took a leave of absence with pay on July 1, 2016, two days after terminating Plaintiff's employment. Am. Compl. ¶ 28. Shortly after Plaintiff's termination, Plaintiff's wife received an anonymous letter in the mail, which, Plaintiff alleges, falsely claimed that Plaintiff was cheating on her and included a picture of a woman in a bikini. Am. Compl. ¶ 29.

### III. STANDARD OF REVIEW

Defendants seek dismissal of Plaintiff's defamation, civil conspiracy, intentional infliction of emotional distress, and public policy discharge claims pursuant to Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003). The court may consider documents attached to a complaint or motion to dismiss "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir.2009) (citing Blankenship

v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir.2006)).

## IV.     DISCUSSION

### A.     Defamation

In his defamation claim, Plaintiff alleges that RCRC and Brown falsely accused Plaintiff of being an "undercover white boy" and "house n****r" and other, similar defamatory comments. He alleges that such publications were made to Plaintiff's coworkers, Board members, and others on several occasions in 2015 and 2016. In addition, Plaintiff alleges that in April of 2016, RCRC and Brown caused to be published false comments that Plaintiff was driving erratically and disciplined him. Plaintiff alleges that the discipline itself creates a defamatory inference apart from the publication of the false comment. Plaintiff alleges that the defamatory words and actions of Brown and other RCRC personnel were made within the course and scope of their employment and have directly and indirectly presented to the public at large the false insinuation that Plaintiff is unfit in his profession and has misused or abused his privileges of driving an RCRC vehicle. Plaintiff alleges that this portrayal is false and made with malicious intent to harm him and in reckless disregard of the truth. Am. Compl. ¶¶ 44-48.

The essential elements of a claim for defamation under South Carolina law are 1) a false and defamatory statement; 2) unprivileged publication to a third party by defendant; 3) fault on the part of the defendant publisher; and 4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Erickson v. Jones Street Publishers, LLC, 368 S.C. 444, 455, 629 S.E.2d 653, 664 (2006). With respect to the fourth element, defamation that is actionable irrespective of special harm is defamation per se, which includes defamatory statements regarding 1) the commission of a crime, 2) contraction of a loathsome disease, 3) adultery, 4)

unchastity, or 5) unfitness in one's business or profession. Fountain v. First Reliance Bank, 398 S.C. 434, 442, 730 S.E.2d 305, 309 (S.C.2012) (citing Goodwin v. Kennedy, 347 S.C. 30, 36, 552 S.E.2d 319, 322-23 (S.C.Ct.App.2001)).

Defendants argue that Plaintiff has failed to state a claim for defamation that is plausible on its face because Plaintiff has only included a formulaic recitation of the elements necessary for such a claim without any factual allegations in support. When reviewing a motion to dismiss, the court must view the factual allegations and all reasonable inferences in favor of the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir.2009). Here, Plaintiff alleges that Defendants called him an "undercover white boy" and a "house n****r" and falsely accused him of and disciplined him for misusing an RCRC vehicle. Name calling, insults, and "words of abuse and scurrillity" can be considered defamatory when the circumstances surrounding their publication are considered, and it is a question for the jury to determine whether such words were used in a defamatory sense given the circumstances. See Capps v. Watts, 271 S.C. 276, 282, 246 S.E.2d 606, 609-10 (1978) (finding that the phrase "paranoid sonofabitch" could be considered defamatory in certain circumstances, which is for the jury to decide); Goodwin v. Kennedy, 347 S.C. 30, 41-42, 552 S.E.2d 319, 325-26 (S.C.Ct.App. 2001) (finding no error where jury was allowed to consider whether the phrase "house n****r" was defamatory when it was used to describe an assistant principal and his ability to discipline students); Wilson v. Evans, 2007 WL 4287644, *7 (D.S.C. Dec. 4, 2007) (holding that whether use of the term "n****r" is defamatory is a question for the jury). Accordingly, dismissal at this stage of the litigation would be inappropriate. Further, with respect to Plaintiff's claim regarding the "unfounded complaint" regarding Plaintiff's use of the RCRC vehicle, Plaintiff has pleaded sufficient allegations to withstand a Rule 12(b)(6) motion to

dismiss.

Defendants also argue that any alleged comments made by Brown to other employees of the RCRC enjoy a qualified privilege. "A communication made in good faith on any subject matter in which the person communicating has an interest or duty is qualifiedly privileged if made to a person with a corresponding interest or duty even though it contains matter which, without this privilege, would be actionable." Murray v. Holnam, Inc., 344 S.C. 129, 140-41, 542 S.E.2d 743, 749 (SC.Ct.App. 2001) (citing Constant v. Spartanburg Steel Prods., Inc., 316 S.C. 86, 447 S.E.2d 194 (1994); Prentiss v. Nationwide Mut. Ins. Co., 256 S.C. 141, 181 S.E.2d 325 (1971)). "Communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business." Id. (citing Conwell v. Spur Oil Co., 240 S.C. 170, 125 S.E.2d 270 (1962)). Defendants do not argue that the alleged comments by Brown that Plaintiff was an "undercover white boy" and "house n****r" were made in good faith and in the usual course of business and has pointed to no applicable privilege for such statements, nor can the court imagine any such privilege. However, they argue that they had a responsibility to investigate the claim regarding Plaintiff's use of the RCRC vehicle, and, thus, statements made during such an investigation are privileged. However, "the protection of a qualified privilege may be lost by the manner of its exercise. . . . [F]or a communication to be privileged, the person making it must be careful to go no further than his interests or his duties require." Id. (citations omitted). The question of whether the privilege has been abused is one for the jury, Id. at 140, 542 S.E.2d at 749, and, thus, a determination of whether Brown's alleged defamatory statements were privileged cannot be made at this stage of the litigation.

Finally, Defendants argue that Plaintiff cannot name both the RCRC and Brown on this cause

of action because Brown is an agent of the RCRC and, thus, under the South Carolina Tort Claims Act (SCTCA), S.C.Code Ann. §§ 15–78–10 et seq., the RCRC is the only proper party. Section 15-78-70(a) of the SCTCA provides that "an employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefore except as expressly provided for in subsection (b)."  Subsection (b) provides that "[n]othing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."  Defendants argue that none of the exceptions provided in subsection (b) apply here.   Plaintiff alleges that Defendant Brown made the alleged defamatory statements with "malicious intent to harm," Am. Compl. ¶ 47, but Defendants argue that this is just a formulaic recitation of the law without any factual allegations in support.  As stated above, the court must view all factual allegations and the reasonable inferences therefrom in favor of the plaintiff.  Here, Plaintiff has provided sufficient factual allegations of actual malice to state a claim that would take the defamation cause of action outside the SCTCA such that Brown could be held personally liable.  In the alternative, if no actual malice is found, RCRC could be held liable for the alleged defamatory statements made by Brown.  See Murray, 344 S.C. at 542 S.E.2d at 748 (noting that "a principal may be held liable for defamatory statements made by an agent acting within the scope of his employment or within the scope of his apparent authority"); see also Rule 8(d)(2) and (3) (allowing for the pleading of alternative theories of recovery).  Thus, dismissal of Plaintiff's defamation cause of action is not appropriate.

   **B.**  **Civil Conspiracy**

  In his civil conspiracy claim, Plaintiff alleges that Defendants Brown, Stringer, Dickerson

and others met at various times and places, schemed, conspired, and planned in secret, outside the scope of their official duties and supervisory roles, to harass and ostracize Plaintiff in an effort to harm him and cause him to be isolated, weaken his authority as a Director of Procurement, and lose his position with RCRC or force him out.  Plaintiff alleges that Brown had personal motivations to harm Plaintiff as evidenced by Brown acting negatively towards Plaintiff and Plaintiff's family.  Plaintiff alleges Brown made racially charged comments towards the Plaintiff because Plaintiff refused to deviate from standard procurement practices. because He further alleges that Stringer and Dickerson were personally motivated to support Brown and, thus, joined in the conspiracy with him.  Plaintiff alleges that these Defendants used their positions of power for the personal and improper reasons of isolating Plaintiff, threatening him, and stripping him of his job duties.  Plaintiff alleges that these Defendants participated in this conspiracy as part of a personal and malicious agenda to cause Plaintiff special harm, including causing him to be ostracized and isolated in the work environment, extreme emotional suffering, embarrassment, humiliation, and attorneys' fees and costs.  Am. Compl. ¶¶ 49-53.

In South Carolina, the tort of civil conspiracy has three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage. Vaught v. Waites, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct.App.1989).  Defendants first argue that Plaintiff's civil conspiracy claim fails because she fails to allege special damages caused by the alleged conspiracy.  "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint," and "because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other cause of action." Hackworth v. Greywood at Hammett, LLC,

385 S.C. 110, 682 S.E.2d 871, 874 (2009) (internal citations omitted). While general damages "are the immediate, direct, and proximate result of the" tortfeasor's conduct, special damages "are the natural, but not the necessary or usual, consequence of the" tortfeasor's conduct. Id. at 116–17, 682 S.E.2d at 875. Plaintiff specifically alleges that the alleged conspiracy by the individual Defendants "cause[d] him special damages, including causing him to be ostracized and isolated in the work environment, extreme emotional suffering, embarrassment, humiliation, and his employment, as well as incurring attorneys' fees and costs." Am. Compl. ¶ 53. Plaintiff does not allege that he suffered ostracization, isolation, embarrassment, or humiliation with respect to his other causes of action. Thus, his allegations of special damages arising from the alleged civil conspiracy are sufficient to survive a Rule 12(b)(6) motion.

Defendants also argue that Plaintiff, as an at-will employee, cannot maintain an action for civil conspiracy against his employer. Under Ross v. Life Ins. Co. of Virginia, 273 S.C. 764, 765, 259 S.E.2d 814, 815 (1979), an at-will employee may not maintain a civil conspiracy action against his employer where the employee alleges that his employer conspired with others to terminate his employment. See also Faile v. Lancaster County, S.C., No. 0:11-cv-2206-CMC, 2013 WL 786447, *4 (D.S.C. Mar. 1, 2013) (holding that an at-will employee cannot sue his employer "or anyone acting within his authority on behalf of his employer" for civil conspiracy arising out of his termination). However, in Reed v. Aiken County, No. 1:09-cv-1744-MBS-TER, 2010 WL 2985805, *3 (D.S.C. July 26, 2010), the court held that "the at-will employment doctrine articulated in Angus [v. Burroughs & Chapin Co., 368 S.C.167, 628 S.E.2d 261 (S.C.2006)] and Ross does not govern actions by employees based on harm other than termination such as isolation and ostracization." Although Plaintiff does allege that the individual Defendants conspired to strip him of his job duties

and cause him to lose his position with RCRC, he also alleges that they conspired to cause him ostracization, isolation, humiliation, and embarrassment. These allegations are sufficient to allege a conspiracy beyond termination, and, therefore, dismissal of this cause of action at this stage of the litigation against is premature.

Finally, Defendants argue that Plaintiff's civil conspiracy claim fails based upon the intercorporate conspiracy doctrine, which provides that a corporation cannot conspire with itself. See McClain v. Pactiv Corp., 360 S.C. 480, 486, 602 S.E.2d 87, 90 (S.C.Ct.App. 2004) (citing Anderson v. S. Ry. Co., 224 S.C. 65, 69, 77 S.E.2d 350, 351 (1953)). However, this doctrine applies to "a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." McMillan v. Oconee Mem'l Hosp., Inc., 367 S.C. 559, 565, 626 S.E.2d 884, 887 (2006); see also Cricket Cove Ventures, LLC v. Gilland, 390 S.C. 312, 325, 701 S.E.2d 39, 46 (Ct. App. 2010) ("In McMillan, our Supreme Court limited this 'intracorporate conspiracy' doctrine to persons acting within the scope of their employment."). Plaintiff alleges that the individual Defendants were "acting outside of the course and scope of their employment" to cause special damages to Plaintiff. Am. Compl. ¶ 55. The Plaintiff further alleges that the civil conspiracy "was done as a part of a personal and malicious agenda to harm the Plaintiff." Id. These facts are sufficient to survive dismissal at this stage of the litigation.

### C. Intentional Infliction of Emotional Distress

Plaintiff alleges that, during his employment and thereafter, he was subjected to severe emotional distress by being targeted by Brown and others with termination, by being treated in a hostile manner by his supervisors, including, but not limited to the January 6, 2016, staff meeting,

and by his wife receiving a letter accusing him of promiscuity along with a picture of a woman in a bikini. Plaintiff alleges that the behavior of Defendants RCRC, Brown and Stringer, by and through their subsidiaries, managers, and employees, constitutes extreme and outrageous conduct that exceeds all bounds of human decency, which no reasonable person should or could be expected to endure. Am. Compl. ¶¶ 54-57.

To recover for the intentional infliction of emotional distress (or outrage), a plaintiff must establish that 1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; 2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" 3) the actions of the defendant caused the plaintiff's emotional distress; and 4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it." Ford v. Hutson, 276 S.C. 157, 162, 276 S.E.2d 776, 778-779 (1981).

Defendants first argue that Plaintiff's claim is barred by the SCTCA. Indeed, specifically, S.C. Code Ann. § 15-78-30(f) states:

> "'Loss' means bodily injury, disease, death, or damage to tangible property, including lost wages and economic loss to the person who has suffered the injury, disease, or death, pain and suffering, mental anguish, and in actions for negligence, but does not include the intentional infliction of emotional harm."

In addition, as set forth above, § 15-78-70(b) provides that "[n]othing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."

Therefore, although RCRC cannot be liable for Plaintiff's claim of intentional infliction of emotional distress, the SCTCA does not prevent Plaintiff for bringing such a claim against Defendants Brown and Stringer.

Defendants next argue that an outrage claim exists only when there is no other claim available for a plaintiff against a defendant. "The tort of outrage was designed not as a replacement for the existing tort actions. Rather, it was conceived as a remedy for tortious conduct where no remedy previously existed." Todd v. South Carolina Farm Bureau Mut. Ins. Co., 283 S.C. 155, 175, 321 S.E.2d 602, 613 (Ct. App. 1984), quashed on other grounds, 287 S.C. 190, 336 S.E.2d 472 (1985). Defendants do not expand on this argument other than to say that Plaintiff still has a Title VII claim pending. However, any claim under Title VII, whether it be discrimination, retaliation, or hostile work environment (not alleged here), requires the offensive conduct to have been based on one of the traits protected by Title VII. An outrage claim has no such requirement. Therefore, a plaintiff could potentially succeed on an outrage claim where he could not on a Title VII claim. Dismissal at this stage of the litigation would be premature. Therefore, although Defendants' motion to dismiss should be granted as to the intentional infliction of emotional distress (outrage) claim against RCRC, it should be denied as to Defendants Brown and Stringer.

### D.     Public Policy Discharge

Plaintiff alleges a state law claim for wrongful termination in violation of public policy, in the alternative to his retaliation claim under Title VII. Even though Plaintiff claims that this cause of action is asserted in the alternative to his Title VII retaliation claim, he does not allege here that Defendants retaliated against him for complaining of discriminatory conduct. He alleges that RCRC is fully aware that there are ongoing law enforcement investigations related to allegations made

against RCRC, Brown, and other and that Plaintiff complied with law enforcement as a witness. He alleges that RCRC is also aware that such allegations include claims of bribery, nepotism, and misuse of public funds. Plaintiff alleges that, in addition to the law enforcement investigations, Richland County Council is withholding excess funding for the RCRC budget pending an audit of RCRC. Plaintiff alleges that he would have been able to provide information and assistance to the auditors as Director of Procurement and his involvement with the bond. Plaintiff alleges that Defendant terminated Plaintiff's employment to retaliate against him for reporting to law enforcement the shredded financial documents he found, to interfere with Plaintiff as a witness in a pending investigation, and to prevent him from participating in the audit. Plaintiff alleges that his termination is wrongful and in violation of clear mandates of South Carolina public policy, including public policies against obstruction of justice, interference with an investigation, tampering with witnesses, misuse of public funds, nepotism and bribery. Am. Compl. ¶¶ 58-64.[2]

Under the public policy exception to South Carolina's at-will employment doctrine, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213 (1985). However, it is well-established that a public policy discharge claim is proper only when a plaintiff has no available statutory remedy. See Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, *4 (4th Cir.1998) (applying South Carolina law and holding public policy discharge claim not allowed where employee had remedy under Title VII); Bolin v. Ross Stores, Inc., No. 08–cv–02759–MJP, 2009 WL 363990, *4 (D.S.C.

---

[2] Plaintiff's paragraphs are numbered, 58, 59, 60, 61, 62, 29, 33. Clearly, paragraphs 29 and 33 under the public policy discharge cause of action should be paragraphs 63 and 64.

Feb.11, 2009) (citing Zeigler v. Guidant Corp., No. 2:07-3448-MBS-RSC, 2008 WL 2001943 (D.S.C.2008)); Ramsey v. Vanguard Servs., Inc., No. 07–00265, 2007 WL 904526 (D.S.C. Mar. 22, 2007) (granting defendant's motion to dismiss employee's wrongful termination claim because the plaintiff had an available statutory remedy under the South Carolina Payment of Wages Act); Lawson v. S.C. Dep't of Corrections, 340 S.C. 346, 350, 532 S.E.2d 259, 261 (S.C.2000) (public policy discharge claim not allowed where employee had remedy under state Whistleblower Act); Stiles v. Am. Gen. Life Ins. Co., 335 S.C. 222, 228, 516 S.E.2d 449, 452 (1999) ("As these cases make clear, the Ludwick exception is not designed to overlap an employee's statutory or contractual rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists") (concurring opinion); Dockins v. Ingles Markets, Inc., 306 S.C. 496, 498, 413 S.E.2d 18, 19 (S.C.1992) (public policy discharge claim not allowed where employee had remedy under Fair Labor Standards Act); Epps v. Clarendon County, 304 S.C. 424, 426, 405 S.E.2d 386, 387 (S.C.1991) (public policy discharge claim not allowed where employee had remedy under 42 U.S.C. § 1983).

Here, Plaintiff does have a remedy for retaliatory discharge, and has pleaded as much in his retaliatory discharge cause of action under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. Plaintiff argues that his wrongful termination claim is pleaded in the alternative, and, as such, he is not precluded from asserting it. Plaintiff argues that, if he is unsuccessful on his Title VII retaliation claim, he should be able to pursue a claim for wrongful discharge under state law. However, the case law provides that a wrongful termination cause of action is available "to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists," Stiles, 335 S.C. at 228, 516 S.E.2d at 452, not to provide a

remedy when a plaintiff is unable to prove his claim under an available statutory remedy. The case law does not provide that a plaintiff must elect either a statutory remedy or a common law remedy, as Plaintiff seems to suggest. Indeed, courts have dismissed claims for wrongful discharge even where the plaintiff has not asserted a cause of action under the appropriate statutory provision. See, e.g., Dockins, 406 S.C. at 498, 413 S.E.2d at 19; Epps, 304 S.C. at 426, 405 S.E.2d at 387. Thus, it follows that the prohibition is not from a double recovery, but from pursuing a claim under common law when a statutory remedy exists. Therefore, to the extent Plaintiff brings this cause of action for termination in retaliation for engaging in conduct protected by Title VII, this statute provides a remedy for such retaliatory discharge, and, thus, dismissal of Plaintiff's public policy discharge claim is proper.

However, Plaintiff alleges that his termination was based on more than just retaliation for engaging in conduct protected by Title VII. He alleges that he was terminated for cooperating with law enforcement in their investigation into Brown, including misuse of funds, bribery, and nepotism, reporting to law enforcement the shredded documents he found in the dumpster, and to prevent him from participating in the upcoming audit. These are not actions protected by Title VII. However, Plaintiff must still identify a clear mandate of public policy violated by Defendants. The South Carolina Supreme Court has expressly recognized at least two situations in which an action for wrongful discharge in violation of public policy can be maintained: (1) when an employer requires an employee to violate a criminal law as a condition of maintaining employment, see Ludwick v. This Minute of Carolina, Inc., 287 S.C. 219, 337 S.E.2d 213, 214-16 (1985), and (2) when the act of terminating an employee is itself in violation of a criminal law, see Culler v. Blue Ridge Elec. Coop., Inc., 309 S.C. 243, 422 S.E.2d 91, 92–93 (1992). "South Carolina courts have been careful

to narrowly interpret the exception, often declining to extend the exception beyond the bounds of Ludwick and Culler." Desmarais v. Sci. Research Corp., 145 F. Supp. 3d 595, 598 (D.S.C. 2015) (collecting cases). The South Carolina Supreme Court has held that "for purposes of juridical application it may be regarded as well settled that a state has no public policy, properly cognizable by the courts, which is not derived or derivable by clear implication from the established law of the state, as found in its Constitution, statutes, and judicial decisions." Batchelor v. Am. Health Ins. Co., 234 S.C. 103, 107 S.E.2d 36, 38 (1959). Plaintiff points to no statute, constitutional protection, or judicial decision setting forth any "clear mandate" of public policy. See Taghivand v. Rite Aide Corp., 411 S.C. 240, 244-48, 768 S.E.2d 385, 387-89 (2015) (finding no clear mandate of public policy protecting individuals who report suspected crimes). Accordingly, dismissal is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss (Document # 5) be granted as to Plaintiff's intentional infliction of emotional distress cause of action against RCRC and his public policy discharge cause of action and denied as to his defamation and civil conspiracy causes of action and his intentional infliction of emotional distress cause of action against Brown and Stringer.

 s/Thomas E. Rogers, III
 Thomas E. Rogers, III
 United States Magistrate Judge

November 2, 2016
Florence, South Carolina