UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| ANTHONY COOPER, | ) | Civil Action No.: 3:16-cv-1606-MGL-TER |
|---|---|---|
| Plaintiff, | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| RICHLAND COUNTY RECREATION COMMISSION, and JAMES BROWN, III, DAVID STRINGER, and TARA DICKERSON, in their individual capacities, | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

This case arises from Plaintiff's employment with Defendant Richland County Recreation Commission (RCRC). The court recently denied summary judgment as to Plaintiff's causes of action for race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., defamation, and intentional infliction of emotional distress and granted summary judgment as to Plaintiff's civil conspiracy and wrongful discharge claims. Presently before the court is Plaintiff's Motion to Compel (ECF No. 97). Plaintiff seeks an order compelling Defendant RCRC to produce an investigative report and other documents related to an investigation into a coworker's internal complaint conducted by attorney Linda Pearce Edwards. Defendant RCRC argues that the information sought by Plaintiff is protected by the attorney-client privilege and/or attorney work-product. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.

## II. RELEVANT FACTS

Plaintiff, at the time relevant to this action, was the Director of Procurement for RCRC. Another RCRC employee, Andrea James, complained that she was sexually harassed by Defendant James Brown, III, who was the Executive Director of RCRC. James Aff. ¶ 2 (ECF No. 50-7, the James Litigation).[1] James first contacted the RCRC Board Chairperson, Ms. J. Marie Green, on December 8, 2015, regarding her complaints about Brown, and filed a formal written complaint to David Stringer, Division Head of Human Resources, on December 9, 2015. James Aff. ¶ 3 and Att. A. On December 10, 2015, James received an email from Mr. Stringer stating

> Andrea,
>
> I have received your documents related to your complaint dated 12/9/2015. RCRC has retained an independent person Linda Pearce Edwards to conduct an investigation and address your concerns.
>
> Linda Pearce Edwards
> Gignilliat, Savitz & Bettis, LLP
>
> As a part of her investigation, Linda will be making appointments with appropriate staff the week of December 14, 2015.
>
> Thank You.

James Aff. ¶ 4 and Att. B.

The next day, December 11, 2015, counsel for James sent a letter to Edwards stating, in part,

> Please be aware that our law firm represents Andrea James, who we allege has been the victim of various wrongful and illegal actions by Mr. Brown over the last several years. We strongly believe that her civil rights have been violated and we intend, if

---

[1] Counsel for Plaintiff originally filed this motion only in a related case, James v. Richland County Recreation Commission, et al, 3:16-cv-1008-MGL ("the James Litigation"). While the motion was pending, the case settled. Thereafter, counsel for Plaintiff filed the present motion in this case, but references some documents filed with the motion to compel in the James Litigation.

> necessary, to file appropriate lawsuits or charges against Mr. Brown, the agency, or whoever are the proper parties in this case.
>
> . . .
>
> I will assume that you represent all of them as well and will not contact them from this point forward.

Attorney Letter (ECF No. 52-1 in the James Litigation). In response to this letter, Edwards emailed counsel for James on December 11, 2015, and stated

> Rick Morgan of McNair represents Richland County Recreation Commission in employment matters. He has asked me to get involved for the limited purpose of investigating Ms. James's recent Discrimination/Retaliation complaint filed against Executive Director James Brown. My only involvement is to interview the witnesses and report my findings to Human Resources Director David Stringer and Rick Morgan.

Edwards Email (ECF No. 51-4 in the James Litigation).[2]

On December 18, 2015, James met with Edwards, who represented to James that she was there as an independent investigator and fact-finder. James Aff. ¶ 5. James and Edwards discussed the alleged sexual harassment and other improprieties and other potential witnesses regarding the sexual harassment. James Aff. ¶ 5. James avers that "[a]t no time during the investigation did Ms. Edwards of RCRC represent to me that she was there to provide legal advice to RCRC." James Aff. ¶ 6.

James filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on February 4, 2016. See EEOC Charge (Ex. B to Notice of Removal (ECF No. 1-2)).

After concluding her investigation, Edwards prepared a summary from the notes she had taken and captioned it "Attorney Work Product Confidential Memorandum." Edwards Aff. ¶ 11

---

[2]Edwards testified in her deposition that she reported her findings only to Morgan. Edwards Dep.25 (Ex. C to Pl. Motion).

(ECF No. 52-2 in the James Litigation). She then met with the RCRC Board on April 4, 2016, in Executive Session and "gave them [her] legal opinion of legal risks based on the legal work[she] had performed." Edwards Aff. ¶ 12. She collected and retained all copies of the Memorandum she prepared at the conclusion of the meeting except for Morgan's copy. Edwards Aff. ¶ 12.

### III. DISCOVERY REQUESTS

In Requests for Production Nos. 1, 2 & 3, Plaintiff asks for documents relating to the investigation of reports and complaints against Executive Director James Brown and RCRC, as well as specifically asking for documents related to the recent investigation conducted at RCRC by Linda Pearce Edwards. In Interrogatory No. 6, Plaintiff requested a "specific summary of any investigation of complaints and reports made against RCRC and Brown. The Defendant RCRC first responded to the Requests for Production with objections of attorney-client privilege and work product and then provided a supplemental response with a copy of an anonymous complaint and billing records with a privilege log for Ms. Edwards. Defendant RCRC responded in kind to the Interrogatory but provided a list of the persons interviewed and, in their supplemental response, what Plaintiff describes as a "vague" description of each witness's comments.

> **REQUESTS FOR PRODUCTION**
>
> 1. All documents, complaints, reports, investigative reports, correspondence, ESI, electronic mail messages, memoranda, notes, statements, interview summaries, and written material of any kind related to the investigation of complaints and reports against James Brown or RCRC by the Plaintiff or any other current or former employees of RCRC, including but not limited to any complaints and investigations identified in answering Interrogatory Number 6.
>
> **RESPONSE**: RCRC hired attorney, Linda Edwards, to review allegations of harassment in order to provide legal advice to RCRC; Ms. Edwards interviewed the Plaintiff and other employees regarding the allegations against Mr. Brown; Ms. Edwards met with the RCRC Board regarding her investigation and legal opinion

concerning the same all of which is covered under attorney-client privilege, attorney work-product or materials prepared in anticipation of litigation.

**SUPPLEMENTAL RESPONSE**: Defendant objects to documents covered attorney-client work product, attorney-client privilege or materials prepared in anticipation of litigation. Without waiving said objection, See attached bates numbered document James vs. RCRC, et al_02792.

2. All reports, finding and memoranda related to the recent investigation performed by Linda Pearce Edwards.

**RESPONSE**: Ms. Edwards met with the RCRC Board regarding her review of the allegations of harassment and legal opinion regarding the same; delivered it orally; all of which work is covered under attorney-client privilege, attorney work-product or materials prepared in anticipation of litigation.

**SUPPLEMENTAL RESPONSE**: See attached privilege log with regard to previously produced documents labeled James vs. RCRC, et al_02778 - 02791.

3. All statements from witnesses listed in answering Interrogatory Number 1 and any other statements or summary of interviews related to or referring to any allegations or defenses raised in this matter.

**RESPONSE**: Defendant objects to documents covered attorney-client work product, attorney-client privilege or materials prepared in anticipation of litigation. Without waiving said objection, See Supplemental Answer to Interrogatory 6.

**INTERROGATORIES**

6. Set forth a specific summary of any investigation of complaints and reports made against RCRC and James Brown, including but not limited to such complaints and reports made by the Plaintiff and other current or former employees of the Richland County Recreation Commission. For each investigation, include the following:

    a) set forth a detailed summary of events with dates;

    b) identify each person involved in the investigation including employees and outside investigators;

    c) identify each individual interviewed or questioned during the investigation and state whether a statement was given and whether a written record, summary or notes concerning the interview were created and by whom;

    d) set forth any findings or conclusions from the investigation; and

    e) describe any actions taken as a result of the findings or conclusions.

See Pl. Am. First Set of Discovery Requests (Ex. A to Pl. Motion); Def. Resp. (Ex. B); Def. Suppl. Resp. (ECF No. 50-6 in the James Litigation). Throughout her memorandum, Plaintiff refers specifically to Edwards' notes of the employee interviews she conducted and the investigative report Edwards presented to the RCRC Board.

## IV. DISCUSSION

  Although RCRC asserted both the attorney-client privilege and the work product doctrine as protecting the discovery requested by Plaintiff, it focuses almost exclusively on the work-product doctrine in its response to Plaintiff's motion to compel. Because the proponent of the attorney-client privilege or the work product doctrine has the burden of establishing their applicability, United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982) (attorney-client privilege); Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 355 (4th Cir. 1992)(work product doctrine), RCRC can choose which protection it wishes to advance.

  The work product protection is broader than the attorney-client privilege in that it is not restricted solely to confidential communications between an attorney and client. In re Sealed Case, 676 F.2d 793, 80809 (D.C. Cir. 1982). Rule 26(b)(3) incorporates the common law articulated in Hickman v. Taylor, 329 U.S. 495 (1947) regarding the protection of work product. Rule 26(b)(3) protects "things that are prepared in anticipation of litigation," whether they are prepared by a parties' attorney, consultant, or other agent. This doctrine is premised on the idea that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." Hickman, 329 U.S. at 510.

The Fourth Circuit has recognized that a party often may prepare documents for multiple purposes, "not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency ... and to respond to regulatory agencies. Determining the driving force behind the preparation of each requested document is therefore required in resolving a work product immunity question." National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992). "The mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity. The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation" Id. (internal citations omitted).

The privilege encompasses both "fact" work product and "opinion" work product. Fact work product, which consists of documents prepared by an attorney that do not contain the attorney's mental impressions, "can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." In re Grand Jury Proceedings, 33 F.3d at 348; see also In re John Doe, 662 F.2d 1073, 1076 (4th Cir.1981) (defining fact work product). Opinion work product, which does contain the fruit of an attorney's mental processes, is absolutely protected. National Union, 967 F.2d at 984.

Before distinguishing between fact and opinion work product, the court must determine whether the documents at issue were prepared in anticipation of litigation. Defendant argues that Edwards' notes of her interviews and her subsequent report or memorandum regarding the interviews were created in anticipation of litigation in light of James's counsel's letter dated December 11, 2015, in which he states "[w]e strongly believe that Andrea's civil rights have been violated and we intend, if necessary, to file appropriate lawsuits or charges against Mr. Brown, the

agency or whoever are the proper parties in this case." Attorney Letter (ECF No. 52-1 in the James Litigation). James submitted her formal, written complaint to Stringer on December 9, 2015, Stringer notified her on December 10, 2015, that RCRC had retained Edwards to investigate her complaint, and Edwards received counsel's letter on December 11, 2015. Even though Edwards was retained prior to receiving counsel's letter, she did not begin her interviews until the week of December 14, 2015. At that point, RCRC faced a real likelihood of litigation following allegations of sexual harassment (i.e., an actual event that reasonably could result in litigation) rather than the mere possibility. However, Plaintiff argues that Edwards' interview notes and memorandum were created in the ordinary course of business because they were for the purpose of conducting an internal investigation, RCRC's harassment policy requires that reports of sexual harassment be investigated, and someone from HR could have conducted such an investigation.

Because the potential for litigation is a particular concern in the context of workplace harassment, the test set forth in National Union above is not necessarily an easy one to apply. "Nevertheless, a court must be satisfied that the document or tangible thing was not created during the ordinary course of business, pursuant to laws, regulations or other obligations, or for any non-litigation reason." Suggs v. Whitiker, 152 F.R.D. 501, 505-06 (M.D.N.C. 1993) (citing National Union, 967 F.2d at 984). The district court for the Eastern District of Virginia provides a thorough analysis of National Union's anticipation of litigation test:

> National Union's "because of" standard operates on two related principles. First, it protects "work product" that is created because of litigation when that litigation is a real likelihood, but not "work product" that is created "because of" litigation when that litigation is merely a possibility. National Union explained that, "because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet the mere fact that litigation does eventually ensue does not, by itself, cloak

> materials with work product immunity." National Union, 967 F.2d at 984. Therefore, to receive protection, the "work product" must be prepared "because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Id. The preparation of work merely because an attorney "anticipates the contingency" of litigation is not sufficient to qualify the work for the protection afforded by the work-product doctrine. Id.
>
> Second, the "because of" standard is designed to protect only work that was conducted because of for [sic] litigation, not work that would have been done in any event. National Union noted that "materials prepared ... pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation ...." 967 F.2d at 984. National Union drew this rule from Goosman v. A. Duie Pyle, Inc., 320 F.2d 45 (4th Cir.1963). In Goosman, the plaintiff sustained injuries when he collided with the defendant's tractor-trailer. Federal regulations required the defendant's agent to make a written statement of the incident. Though litigation was evidently imminent, the Goosman court ruled that the report was not "work product." Id. at 52. National Union construed Goosman to mean that where regulations or other "non-litigation" responsibilities compel a party to produce "work product," that product is made "in the ordinary course of business, and does not receive work product immunity." National Union, 967 F.2d at 984.

RLI Ins. Co. v. Conseco, Inc., 477 F.Supp.2d 741, 747 (E.D.Va. 2007). The court found useful the Second Circuit's exposition of the "because of" standard: "the 'because of' formulation . . . withholds protection from documents . . . that would have been created in essentially similar form irrespective of the litigation." United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir.1998). The Ninth Circuit has also addressed whether "dual purpose" documents may enjoy work product protection:

> The question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation. The circumstances surrounding the document's preparation must also be considered. In the "because of" Wright & Miller formulation, "the nature of the document and the factual situation of the particular case" are key to a determination of whether work product protection applies. Wright & Miller § 2024 (emphasis added). When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated.

In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.), 357 F.3d 900 (9th Cir.2004). The court held that the documents at issue there, prepared both in anticipation of potential environmental litigation with the EPA and for the purpose of determining compliance with an environmental Consent Order, were protected by the work product doctrine notwithstanding their dual purpose "because, taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole." Id. at 910.

> Courts in this circuit have recognized that
>
> There is no hard and fast rule to determine the point in time when a document is created under the ordinary course of business, and therefore not protected by the work product doctrine, or under the anticipation of litigation, and therefore, protected by the work product doctrine. Therefore, the Court adopts a "case-by-case" approach to this issue, and considers the following factors relevant in this analysis: "the nature of the documents, the nature of the litigation, the relationship between the parties, and any other fact peculiar to the case," and, in addition, the involvement of counsel. Furthermore, the Court considers persuasive, in this analysis, the time when the document is created.

Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 536, 542 (N.D.W. Va. 2000) (citing Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos., 123 F.R.D. 198, 202 (M.D.N.C.1988)); see also Westfield Ins. Co. v. Carpenter Reclamation, Inc., 301 F.R.D. 235, 250 (S.D.W. Va. 2014). In the present case, the nature of the documents includes notes taken by Edwards, an attorney[3], during an investigation into James's internal complaint regarding Brown, and a memorandum prepared by

---

[3]Plaintiff argues with respect to Defendant's assertion of attorney-client privilege that Edwards was not acting as a lawyer when she investigated her internal complaint, but rather as a fact-finding investigator. However, documents do not have to be created by an attorney to enjoy work-product protection. United States v. Nobles, 422 U.S. 225, 238-39 (1975) (holding that the work product doctrine protects not only those materials prepared by a party and its agents, including its attorney, but also those materials prepared by "agents for the attorney").

Edwards following her investigation. The James Litigation, of which both RCRC and Edwards became aware prior to Edwards beginning her investigation, arises from the same or substantially the same facts as the matter investigated by Edwards. Further, Edwards was asked by both Springer and RCRC's present counsel, Richard Morgan, to conduct the investigation into James's complaint. "Involvement of an attorney is a highly relevant but not necessarily controlling factor." Pete Rinaldi's, 123 F.R.D. at 202. Although Edwards indicated to counsel for James that her only involvement was to interview witnesses and report her findings to Springer and Morgan, this does not mean that her interviews were not done in anticipation of litigation, especially since she was notified of the likelihood of litigation before she even began the interviews.

In the human resources context, courts are split as to whether documents created during an internal investigation of a harassment complaint are created in the ordinary course of business or in anticipation of litigation. In Long v. Anderson University, 204 F.R.D. 129, 137 (S.D.In. 2001), the court found no work product protection for documents created by members of the human resources department regarding the plaintiff's complaint of sexual harassment even though counsel advised those investigating throughout the process, and the plaintiff's counsel had threatened litigation if the claims were not resolved because the investigation was done in accordance with the defendant's harassment policy. However, the transcript of an interview that occurred after it became clear that the claims could not be resolved without litigation was protected by the work product doctrine. Id. Similarly, in Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 29 F. Supp. 3d 142, 149-50 (E.D.N.Y. 2014), the court held that the work product protection did not apply to an internal investigation conducted by someone in the human resources department even though the person consulted with outside counsel during the investigation. The court found that outside counsel advised the person

conducting the investigation not on litigation issues but rather on how to conduct the internal investigation and how to address the plaintiff's ongoing work performance issues and, thus, the documents relating to that process were not prepared in anticipation of litigation. Id.[4]

However, in <u>Miller v. City of Los Angeles</u>, No. CV 13-5148 GW (Cwx), 2015 WL 12781181, *3 (C.D.Ca. May 15, 2015), the court held that the defendant city appropriately asserted the work product protection for an outside consultant who was hired by the city's attorney to conduct an internal investigation, noting that the consultant was hired as an agent of the city. Like Edwards, the outside consultant was an attorney but was hired as an investigator. Id. In <u>Bickler v. Senior Lifestyle Corp.</u>, 266 F.R.D. 379, 383 (D.Ariz. 2010), the court held that the work-product protection applied to an investigation conducted by a member of the human resources department, as well as the executive director, of an assisted living home and skilled nursing center into injuries suffered by two residents because it was undertaken at the direction of the home's in-house counsel and in anticipation of litigation. The court noted that from the moment of the incident, family members of the injured residents raised the prospect of litigation, and executive director feared that the home would be sued. Id. Likewise, counsel for RCRC asked Edwards to conduct an investigation into James's claims. Further, counsel for James notified Edwards within three days of James's complaint that James intended to, "if necessary, file appropriate lawsuits."

The facts in the present case are more akin to those in cases where the court found the work product doctrine applicable. After receiving James's complaint, rather than having someone within

---

[4]The court also noted that the human resources department received advice from outside counsel with the intent, in part, of preventing litigation, and "[l]egal advice given for the purpose of <u>preventing</u> litigation is different than advice given in an <u>anticipation</u> of litigation." Koumoulis, 29 F. Supp. 3d at 150.

the human resources department conduct an investigation, Morgan retained Edwards, an outside attorney, and directed her to conduct an investigation of the claims. Counsel for James notified Edwards that James intended to file a lawsuit, if necessary, prior to Edwards beginning her investigation. Edward reported her findings to Morgan, counsel for RCRC, then prepared a report entitled "Attorney Work Product Confidential Memorandum," and met with the RCRC Board to give "them [her] legal opinion of legal risks based on the legal work [she] had performed." Edwards Aff. ¶ 12. "The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation.'" Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024 (2d ed. 1994). While the driving force for the initial engagement of Edwards's services may be less clear, considering the totality of the circumstances, including that James retained an attorney at the same time or immediately following her complaint to RCRC, Edwards is an attorney and was hired to conduct the investigation by counsel for RCRC, the letter sent from James's counsel to Edwards had a threat-of-litigation tone, James filed her a charge of discrimination with the EEOC, and Edwards prepared a memorandum entitled "Attorney Work Product Confidential Memorandum," the documents sought by Plaintiff were created by Edwards in anticipation of litigation and, thus, are protected by the work product doctrine.

As stated above, despite finding that the work product doctrine applies, fact work product, which consists of documents prepared by an attorney that do not contain the attorney's mental impressions, "can be discovered upon a showing of both a substantial need and an inability to secure

the substantial equivalent of the materials by alternate means without undue hardship." In re Grand Jury Proceedings, 33 F.3d at 348; see also In re John Doe, 662 F.2d 1073, 1076 (4th Cir.1981) (defining fact work product).[5] Generally, there is no substantial need for a document protected by the work-product doctrine when the requesting party can gather the information contained within the document by way of deposition. See, e.g., Trammell v. Anderson College, 2006 WL 1997425, *2 (D.S.C. July 17, 2006) (denying motion to compel where investigator's report was work product, and employee of investigator could be deposed); Hohenwater v. Roberts Pharmaceutical Corp., 152 F.R.D. 513, 516–17 (D.S.C.1994) (finding no substantial need or undue hardship where requesting party could depose those who participated in preparation of work product memorandum); see also United States v. Bertie Ambulance Serv., Inc., No. 2:14-CV-53-F, 2015 WL 3932167, *7 (E.D.N.C., June 25, 2015) (denying a motion to compel interview notes of two deceased witnesses based on the parties' failure to show substantial need or undue hardship when they "failed to show any measures taken to try to obtain the information from another source"); Long, 204 F.R.D. at 138 (holding the plaintiffs failed to show undue hardship to obtain an interview transcript because the plaintiffs could discover the names of the individuals interviewed and conduct their own interviews or depositions). Here, Defendants provided the names of the witnesses interviewed by Edwards in their discovery responses. Plaintiff fails to show a substantial need or an undue hardship in obtaining the facts collected by Edwards during her investigation.[6] In sum, Defendants have shown that the documents

---

[5]Opinion work product, which does contain the fruit of an attorney's mental processes, is absolutely protected. National Union, 967 F.2d at 984.

[6]"A party may establish a substantial need for statements made contemporaneously with the incident at question because such statements 'are unique in that they provide an immediate impression of the facts.'" Bryant v. Trexler Trucking, 2012 WL 162409, *3 (D.S.C. Jan. 18, 2012) (citing 6 Moore's Federal Practice § 26.70[5][c] (Matthew Bender 3d ed.)). Most courts

requested by Plaintiff are protected from disclosure by the work product doctrine, and Plaintiff has failed to present evidence sufficient to establish an exception to this doctrine.[7] Accordingly, Plaintiff's motion is denied.[8]

---

hold that the statement must have been taken at the scene of the accident. Id.; but see McDougall v. Dunn, 468 F.2d 468, 475 (4th Cir.1972) (finding statements taken "shortly" after accident were discoverable by plaintiff who suffered brain injuries in an accident and was helpless to secure contemporaneous statements from witnesses). The statements at issue in this case were not given in response to an accident or specific incident, nor has Plaintiff shown any other circumstances that would show a substantial need or undue hardship.

[7]Plaintiff briefly mentions "other exceptions and waivers applicable to this matter." Pl. Motion p. 8. Plaintiff mentions the crime-fraud exception, see In re Grand Jury Proceedings #5 Empanelled Jan. 28, 2004, 401 F.3d 247, 251 (4th Cir. 2005), but fails to present sufficient evidence to show that it applies here. He also mentions waiver due to RCRC's assertion of the Faragher–Ellerth defense in the James Litigation that they took reasonable actions once James complained of the sexual harassment. See McGrath v. Nassau County Health Care Corp., 204 F.R.D. 240, 246 (E.D.N.Y. 2001) (noting the unfairness in allowing a defendant to invoke the Faragher-Ellerth defense while at the same time protecting the documents the defendant relies on for that defense). However, RCRC has not raised the Faragher-Ellerth defense in this case, and the James Litigation was settled before it reached the summary judgment stage and so it was unnecessary for RCRC to rely on the documents at issue.

[8]Plaintiff requests that the court review the documents in camera. The Court may engage in an in camera review of documents that are claimed to be privileged in order to determine whether an exception to such privilege applies. United States v. Zolin, 491 U.S. 554, 572 (1989) (permitting in camera review to determine whether crime-fraud exception applies). However, before the Court may engage in such a review, the movant must present "a factual basis adequate to support a good faith belief by a reasonable person ... that in camera review of the materials may reveal evidence to establish the claim that the ... exception applies." Id. (internal citation omitted). Once that threshold showing is made, the determination of whether to engage in an in camera review is a matter of the Court's discretion. Id.; In re Grand Jury Proceedings, 33 F.3d 342, 350 (4th Cir. 1994). Plaintiff has failed to make the threshold showing.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Compel (ECF No. 97) is **DENIED**.

**IT IS SO ORDERED.**

                                                s/Thomas E. Rogers, III
                                                Thomas E. Rogers, III
                                                United States Magistrate Judge

September 25, 2018
Florence, South Carolina